UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALVARO ALEMAN, IDOC #R-72885, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08CV6322 |
| v. | ) | |
| | ) | Judge Robert M. Dow Jr. |
| THOMAS DART, in his official capacity as | ) | |
| Sheriff of Cook County, | ) | Jury Demand |
| SALVIDOR GODINEZ, in his official capacity as | ) | |
| Director, Cook County Department of Corrections, | ) | |
| JOHN DOE I, in his official capacity as Administrator, | ) | |
| Cook County Department Of Corrections, | ) | |
| DAVID ORR, in his official capacity as Warden, | ) | |
| Cook County Department of Corrections, | ) | |
| JOHN DOE II, in his official capacity as | ) | |
| Superintendent of Division 6, 2R, Cook County | ) | |
| Department of Corrections, | ) | |
| AVERY HART, in his official capacity as Medical | ) | |
| Director, Cook County Department of Corrections, | ) | |
| DAVID FAGUS, in his official capacity as Chief | ) | |
| Operating Officer of Cermak Health Services | ) | |
| JANE DOE I, Division 6, 2R day room Correctional | ) | |
| Officer, Cook County Department of Corrections. | ) | |
| JANE DOE II, a member of medical staff, Cook County | ) | |
| Department of Corrections, | ) | |
| JOHN DOE III, morning Correctional Officer, Division 6, | ) | |
| 2J, Cook County Department of Corrections, | ) | |
| JOHN DOE IV, afternoon Correctional Officer, Division | ) | |
| 6, 2J, Cook County Department of Corrections, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Alvaro Aleman ("Aleman"), by and through his *pro bono* attorneys, DLA Piper

LLP (US), for his First Amended Complaint against defendants Thomas Dart, the Sheriff of

Cook County, Salvidor Godinez, Director of the Cook County Department of Corrections (the

"CCDOC"), John Doe I, Administrator of the CCDOC, David Orr, Warden of the CCDOC, John

1

Doe II, Superintendent of Division 6, 2R at the CCDOC, David Fagus, Chief Operating Officer

of Cermak Health Services, Avery Hart, Medical Director of the CCDOC, Jane Doe, Division 6,

2R, day room Correctional Officer at the CCDOC, Jane Doe II, member of medical staff at the

CCDOC, John Doe III, morning Correctional Officer, Division 6-2J at the CCDOC, and John

Doe IV, afternoon Correctional Officer, Division 6-2J at the CCDOC (collectively, the

"Defendants"), states:

## NATURE OF ACTION

1.      Aleman brings this First Amended Complaint pursuant to the Eighth and

Fourteenth Amendments to the Constitution of the United States and the Civil Rights Act, Title

42, Section 1983 ("Section 1983").  This Section 1983 case concerns the serious injuries Aleman

incurred as a result of the Defendants' failure to protect Aleman's safety from other inmates and

deliberate indifference to Aleman's serious medical needs.  Two inmates attacked Aleman in an

unsupervised day room and his injuries worsened due to unsanitary conditions, disregard of his

developing infections, and other inadequate medical care and attention.  Aleman suffered

significant injury and unnecessary and wanton infliction of pain, and eventually required

hospitalization for eight days.  Aleman seeks to redress his wrongs and damages suffered as a

result of the Defendants' wrongful acts or omissions and seeks monetary damages and other

relief that the Court deems equitable and just.

## PARTIES

2.      Aleman is an individual who, at all times relevant to this action, resided in the

State of Illinois. Aleman currently resides at the Shawnee County Adult Detention Center in

Vienna, Illinois.

3.      Defendant Thomas Dart is the Cook County Sheriff.  Defendant Dart is responsible for the operations and administration of the CCDOC, including but not limited to: (a) supervising the policies, customs and regulations of the CCDOC; (b) protecting the safety of inmates, including ensuring that CCDOC staff members take reasonable measures to protect and supervise inmates; (c) implementing and enforcing policies for supervision of the inmates by guards and procedures for securing replacement supervision in the event a guard leaves his or her post; and (d) ensuring that sick and injured inmates are provided prompt and appropriate medical treatment.

4.      Defendant Salvidor Godinez is the Director of CCDOC.  Defendant Godinez is responsible for the operations and administration of the CCDOC, including but not limited to: (a) supervising the policies, customs and regulations of the CCDOC; (b) protecting the safety of inmates, including ensuring that CCDOC staff members take reasonable measures to protect and supervise inmates; (c) implementing and enforcing policies for supervision of the inmates by guards and procedures for securing replacement supervision in the event a guard leaves his or her post; and (d) ensuring that sick and injured inmates are provided prompt and appropriate medical treatment.

5.      Defendant John Doe I is the Administrator of the CCDOC.  Defendant John Doe I is responsible for the operations and administration of the CCDOC, including but not limited to: (a) supervising the policies, customs and regulations of the CCDOC; (b) protecting the safety of inmates, including ensuring that CCDOC staff members take reasonable measures to protect and supervise inmates; (c) implementing and enforcing policies for supervision of the inmates by guards and procedures for securing replacement supervision in the event a guard leaves his or her

post; and (d) ensuring that sick and injured inmates are provided prompt and appropriate medical treatment.

6.     Defendant David Orr is the Warden of the CCDOC. Defendant Orr is responsible for the operation of the CCDOC, including the overall management of the CCDOC and its inmates, personnel, programs and activities, and administrative functions, as well as the oversight of day-to-day operations. He is also responsible for supervising the policies, customs and regulations of the CCDOC and the safety of inmates, including ensuring that CCDOC staff members take reasonable measures to protect inmates.  Defendant David Orr is also responsible for ensuring that inmates are treated properly and provided prompt medical treatment. Defendant David Orr's responsibilities also include implementing and enforcing policies for supervision by guards and replacement supervision in the event a guard leaves his or her post.

7.     Defendant John Doe II is the Superintendent of Division 6, 2R at the CCDOC. Defendant John Doe II is responsible for the operation of Division 6, 2R at the CCDOC, including the management of its inmates, personnel, programs and activities, and administrative functions, as well as the oversight of day-to-day operations.  Defendant John Doe II is responsible for the operations and administration of the Division 6, 2R, including but not limited to: (a) supervising the policies, customs and regulations of the CCDOC; (b) protecting the safety of inmates housed in Division 6, 2R, including ensuring that CCDOC staff members take reasonable measures to protect and supervise inmates; (c) implementing and enforcing policies for supervision of the inmates housed in Division 6, 2R by guards and procedures for securing replacement supervision in the event a guard leaves his or her post; and (d) ensuring that sick and injured inmates are provided prompt and appropriate medical treatment.

8.      Defendant Avery Hart is the Medical Director at the CCDOC. Defendant Hart is responsible for medical treatment of prison inmates and the oversight of the administration of medical aid to prison inmates at the CCDOC, including but not limited to: (a) monitoring the medical conditions of inmates who return from the CCDOC infirmary or Cermak Health Services; (b) assessing inmates and determining when they are in need of medical aid; (c) implementing, enforcing and overseeing policies to ensure that medical staff provide prompt and appropriate medical treatment to inmates.

9.      Defendant David Fagus is the Chief Operating Officer of Cermak Health Services ("Cermak") and is responsible for the functioning of Cermak.  Defendant Fagus is responsible for medical treatment of prison inmates and the oversight of the administration of medical aid to prison inmates at the CCDOC, including but not limited to: (a) monitoring the medical conditions of inmates who return from the CCDOC infirmary or Cermak Health Services; (b) assessing inmates and determining when they are in need of medical aid; (c) implementing, enforcing and overseeing policies to ensure that medical staff provide prompt and appropriate medical treatment to inmates.

10.      Defendant Jane Doe I is a correctional officer at the CCDOC. On December 31, 2006, Defendant Jane Doe I was responsible for guarding prison inmates in the day room in Division 6, 2R.  Defendant Jane Doe I also has a duty to recognize and respond to inmates' medical needs, complaints of pain and refer inmates to medical staff when necessary.

11.      Defendant Jane Doe II is a member of the medical staff in the infirmary at the CCDOC.  Defendant Jane Doe II initially treated Aleman for his injuries and subsequently failed to provide further necessary medical aid and pain medication to Aleman.  Defendant Jane Doe II has a duty to ensure that inmates receive necessary medical care and treatment.  She also has a

duty to recognize and respond to inmates' medical needs, complaints of pain and treat such inmates accordingly.

12.     Defendant John Doe III is a correctional officer at the CCDOC, guarding inmates in Division 6, 2J during the morning hours from 7 a.m. to 3 p.m. Defendant John Doe III is responsible for guarding prison inmates, and, on information and belief, alerting responsible personnel of the CCDOC medical staff about medical needs of the inmates and ensuring that such medical needs are so provided.

13.     Defendant John Doe IV is a correctional officer at the CCDOC, guarding inmates in Division 6, 2J during the afternoon and evening hours from 3 p.m. to 11 p.m. Defendant John Doe IV is responsible for guarding prison inmates, and, on information and belief, alerting responsible personnel of the CCDOC medical staff about medical needs of the inmates and ensuring that such medical needs are so provided.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over Aleman's claims, which arise under the Eighth and Fourteenth Amendments to the United States Constitution, and under 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1331.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to this action occurred in this district.

## FACTUAL ALLEGATIONS

### Division 6, Unit 2R

16.     Aleman resided in CCDOC from December 6, 2006 through August 8, 2008. He was housed in Division 6, 2R between December 31, 2006 and January 11, 2007.

17.     There are 20 cells in Division 6, 2R.  On information and belief, there is a policy to house two inmates per cell; however, there are often three inmates per cell.  On information and belief, many inmates at the CCDOC are members of gangs. Aleman is not a member of a gang.

18.     On information and belief, the cells in Division 6, 2R form a rectangle around what is known as the "day room."  The day room has a television, three telephones, three tables and access to a bathroom.  Each morning, at approximately 7:30 a.m., a guard unlocks the inmates' cell doors and allows them access to the day room.  The doors to the cells can be locked and unlocked either manually or automatically by a guard pressing a button located in a separate office adjoining the day room, where a guard is stationed, watching the inmates through a window.

19.     All of the inmates in Division 6, 2R, approximately 40 if each cell is occupied by two (2) inmates, usually occupy the day room each morning from 7:30 a.m. to 1:00 p.m.  Inmates are not handcuffed or otherwise restrained while in the day room so they are free to move around and interact with each other.  There are no guards present inside of the day room while it is occupied by the inmates.

***The Assault***

20.     On December 31, 2006, Aleman and approximately 50 or 55 other inmates were in the day room – many more than are typically present.  On information and belief, many of those inmates were gang members and were known and believed by CCDOC staff to be violent and a potential danger to other inmates.

21.     The guard on duty during the morning of December 31, 2006 was an average size African American female with black hair, in her thirties or forties, identified herein as Defendant

Jane Doe I. Aleman saw that Defendant Jane Doe I was present at the window when the inmates entered the day room. Aleman again looked to the window approximately 15 to 20 minutes prior to the incident and Defendant Jane Doe I was present.

22. At approximately 12:30 p.m., two inmates approached Aleman, who was sitting alone on the floor of the day room. The two inmates began speaking and yelling at him in English. Aleman speaks Spanish and does not speak, understand or write English and he did not understand what his attackers were saying or what provoked them. Both inmates were African American and Aleman believes they were in a gang. One was young (mid-twenties or younger), tall, and thin with short hair. The other was taller, more muscular and older (mid-twenties to mid-thirties).

23. Aleman stood up when the two inmates approached and began yelling at him. He looked to the window where Defendant Jane Doe I was to be stationed. Defendant Jane Doe I was not at her post in the window. The two inmates yelled at Aleman, pushed Aleman to the ground and kicked and punched Aleman in the face, head and stomach. Once pushed to the floor, Aleman tried to cover and protect his face from the blows of the assailants' punches and kicks. No inmates and no guards or other CCDOC staff members came to Aleman's assistance.

24. After the attack, the assailants left Aleman lying on the floor, bleeding from his mouth, nose and face. At 1:00 p.m., the doors to the cells opened so that the inmates could return to their cells. Aleman got up by himself and wiped the blood off his face using his white t-shirt. Aleman did not see Defendant Jane Doe I before returning to his cell.

### *Aleman's Injuries*

25.     As a result of the attack, Aleman lost three teeth and two were loose and nearly falling out.  His lips were swollen and broken on both the inside of his mouth and visible from the outside.  His left eye was swollen from being hit and the rest of his face was also swollen.

26.     After Aleman returned to his cell, he saw Jane Doe I walking near his cell and attracted her attention by dangling his bloody t-shirt in front of the window in his cell.  He saw Defendant Jane Doe I use her radio and additional guards came to his cell.

27.     Among the three guards who responded was Sergeant Martinez ("Martinez"), who spoke Spanish.  Martinez asked Aleman what had happened and who had assaulted him. Aleman was afraid to tell the truth, worrying that he would be beaten again by the inmates. Aleman told Martinez that he had fallen off of his bed and hurt himself.  Martinez and the other guards told Aleman that they did not believe him.

28.     The two guards and Sergeant Martinez took Aleman to the infirmary for treatment.  Defendant Jane Doe I did not accompany Aleman to the infirmary.

### *Aleman's Treatment at the Infirmary*

29.     While at the infirmary, Aleman admitted that he had been attacked by two other inmates.  Martinez left the infirmary and returned with one prisoner's ID.  Aleman identified the man in the photo on the ID card as one of the assailants.

30.     Aleman spent approximately 30 minutes in the infirmary.  A nurse, identified herein as Defendant Jane Doe II, cleaned Aleman's mouth with alcohol and inserted cotton balls to stop the bleeding.  Defendant Jane Doe II did not speak to Aleman in Spanish.  Aleman, therefore, was unable to describe his pain or answer questions from the nurse.  Defendant Jane

Doe II did not ask Martinez to translate for her. Aleman saw Defendant Jane Doe II speaking with the guards but could not understand what she told them because they spoke in English.

### Aleman's Treatment at Cermak Hospital

31.     Aleman was then taken by a guard, described as a tall, bald African American male, to Cermak. Aleman did not specifically request to go to the hospital.

32.     At the hospital, Aleman was seen by an X-ray technician who took X-rays of his head and gave him a packet containing 14 pain pills and three ice packs. The X-ray technician also spoke with the guard who accompanied Aleman; however, Aleman did not understand what they were saying because they spoke in English. Cermak released Aleman to the guard's custody after disbursing the medicine and taking the X-rays.

33.     Aleman was not told that he had an infection when he left Cermak on December 31, 2006. He was provided with pain medication but he did not receive any other medications.

### Aleman's Return to Cook County Department of Corrections

34.     The guards took Aleman back to the CCDOC and to his cell to retrieve his belongings. He was moved to Division 6, 2J. Division 6, 2J is similar in size, layout, and function as Unit 2R. It is not a special unit for inmates who need medical attention.

35.     When Aleman was brought to Division 6, 2J, he was not assigned to a cell. Instead, Aleman and several other inmates were directed to sleep underneath a staircase in the day room on mattresses.

36.     On January 1, 2007, Aleman could not eat because he was suffering from increasingly severe pain in his mouth making him unable to chew. The spaces in his mouth vacated by the lost teeth also caused him pain. Aleman was able to drink liquids.

37.     On January 1, 2007, Aleman communicated to the morning guard, on duty daily from 7:00 a.m. to 3:00 p.m. and identified herein as Defendant John Doe III, that he was in severe pain and could not eat as a result.  Aleman described Defendant John Doe III as a tall African American male with short hair.  Defendant John Doe III communicated to Aleman that he could not do anything to help Aleman and that Aleman would have to speak with the Sergeant.

38.     Aleman also complained that he could not eat and was in pain to the afternoon guard, who is on duty daily from 3 p.m. to 11 p.m. and identified herein as Defendant John Doe IV.  Aleman communicated to Defendant John Doe IV his request to see the Sergeant and to go to the infirmary.  Defendant John Doe IV did not provide Aleman with assistance.

39.     On or about January 1 and January 2, 2007, Aleman requested stronger pain medication because of the increased pain.  Defendant John Doe III brought him a form to fill out to request stronger medication.  Aleman returned the form to Defendant John Doe III but never received stronger medication.

40.     From January 1 to January 4, 2007, Aleman complained to Defendant John Doe III and Defendant John Doe IV that he could not eat, the swelling had not subsided, but had in fact worsened, and that his pain and injuries had grown increasingly severe.  Each day, Aleman's pain and injuries worsened.  He was also exposed to unsanitary conditions residing under the stairs on mattresses with several other inmates and he was not provided medication to control his pain or medical attention to address the worsening condition.

41.     On January 4, 2007, Aleman was in severe pain.  He could no longer see out of his left eye due to swelling and he could not eat or drink.  His mouth was so severely irritated and in pain that he had trouble speaking.  With the help of his bilingual cellmate, Aleman asked

to speak with the Sergeant. Aleman was crying out loud when the Sergeant arrived. Aleman was sent to Cermak. The guard who took Aleman to Cermak was a Caucasian male with short blonde hair, in his mid-twenties to early thirties.

### Aleman Returns to Cermak Hospital for Treatment for Worsened Condition

42.     When Aleman arrived at Cermak, the nurse who attended to him was a Spanish-speaking Latina female, in her fifties or sixties. She informed Aleman that he had contracted an infection and that the infection was so severe that it could not be treated by oral medication. The nurse translated what the English-speaking doctor said to Aleman and also spoke with the guard. Aleman was placed on intravenous medications.

43.     Aleman remained at Cermak on intravenous medications for eight days. He also continued taking oral pain medications. Aleman ate only blended food that he could drink through a straw.

44.     By January 11, 2007, the swelling of Aleman's face had subsided; however, even at this point, after several days of treatment, it was still painful for Aleman to eat, move his tongue or speak. Aleman had lost three teeth during the assault and a Cermak dentist removed two additional teeth due to infections in Aleman's teeth and gums. Aleman lost a total of five teeth as a result of the assault, unsanitary conditions, subsequent infection and delay of medical care.

### Aleman Returns to Medical Unit

45.     On January 11, 2007, Aleman was released from Cermak. Upon return to the CCDOC, Aleman was moved to Division 6, 2A. On information and belief, Division 6, 2A is the unit where prisoners are housed when they return from Cermak and need further medical

attention.  A nurse visits inmates housed in Division 6, 2A twice a day – once in the morning and once in the evening.

46.  By February 2007, Aleman felt better.  His injuries had healed and his health had improved.  Despite the improvement, he continues to suffer from fainting spells and other related complications to this day.

### Aleman's Grievance and Complaint

47.  On or about February or March 2007, Aleman completed a grievance form in connection with the CCDOC guard and medical staff's failure to provide him with medical care. Aleman needed another inmate who spoke English and Spanish to assist him in completing the form.  Aleman turned in the form to the mailbox where grievance forms were to be delivered, but never received a response to his complaints.

48.  At some point shortly after he submitted his form, Martinez and a detective visited Aleman, took him to a separate room and asked him to sign forms to press charges or make a formal complaint against the two inmates who assaulted him.  Aleman did not sign the forms because he feared retaliation from the inmates.

49.  On or about June or July 2008, Aleman, with the assistance of a Spanish and English speaking inmate, wrote and filed a complaint in the United States District Court, Northern District of Illinois, containing allegations that various parties violated the Civil Rights Act, Title 42, Section 1983, by failing to protect him from other inmates and denying him prompt and appropriate medical care.

### Recognized Pattern of Constitutional Violations

50.  On July 11, 2008, the Civil Rights Division of the United States Department of Justice and the United States Attorney's Office reported the findings of a comprehensive 17-

month investigation of the CCDOC in a 98 page letter to Cook County Board President, Todd Stroger and Cook County Sheriff, Thomas Dart. The investigation included on-site inspections with expert consultants in corrections and custodial medical care, among other areas. The letter substantiates many of Aleman's claims, including but not limited to his claims regarding: (a) inadequate protection from harm by other inmates; (b) deficient inmate safety and supervision; (c) inadequate security staffing; (d) inadequate medical treatment; (e) inadequate medical staffing; (f) inadequate emergency care; (g) inadequate medication administration; and (h) inadequate access to medical care.

**COUNT I**
**EIGHTH AND FOURTEENTH AMENDMENT CLAIM CONCERNING**
**FAILURE TO PROTECT INMATE SAFETY IN VIOLATION 42 U.S.C. § 1983**

**A.     DEFENDANT JANE DOE I– DIRECT LIABILITY FOR VIOLATION OF CCDOC POLICY**

51.     Aleman restates and re-alleges the allegations set forth in paragraphs 1 through 50 of this First Amended Complaint.

52.     CCDOC guards have a duty to exercise reasonable care and take reasonable precautions to protect inmates from being beaten and otherwise injured by other inmates.

53.     On information and belief, the CCDOC has a policy that requires inmates to be supervised at all times when they are in a day room without restraints.

54.     On information and belief, administrators, guards, and other staff knew or had reason to believe that several inmates that shared the day room with Aleman were gang members or otherwise had a history of, or had been charged with, violent crimes and posed a realistic threat to other inmates if left unsupervised.

55.     Defendant Jane Doe I was the guard assigned to supervise Aleman and other inmates in the dayroom in Division 6, 2R on December 31, 2006 at or about 12:30 p.m.

56. In direct violation of the policy, Defendant Jane Doe I left her post at the day room at approximately 12:30 p.m. on December 31, 2006.

57. Defendant Jane Doe I knew that at the time she left the day room, the day room was occupied by 50-55 inmates, approximately 10-15 more inmates than on an average day, and that the inmates were not handcuffed or otherwise restrained.

58. Defendant Jane Doe I knew or should reasonably have been aware that her absence would substantially increase the risk that certain inmates would face beatings at the hands of other inmates and, as a result, that there was a substantial risk of serious harm to the inmates.

59. When Jane Doe I left her post at the day room, she breached her duty to protect Aleman from being beaten or otherwise injured by other inmates.

60. During Defendant Jane Doe I's absence, two inmates attacked Aleman and Aleman sustained severe injuries including bleeding, swelling of the face, total of five lost teeth, bruises and scratches.

61. But for Defendant Jane Doe I's absence, failure to supervise, and failure to take reasonable precautions to protect Aleman and other inmates from being assaulted by other inmates, Aleman would not have been beaten and injured.

WHEREFORE, Aleman respectfully requests that the Honorable Court declare that the acts and omissions described herein violated Aleman's rights under the Constitution of the United States and 42 U.S.C. § 1983, enter judgment in favor of Aleman for damages, and such other relief as this Honorable Court deems proper.

**B.      SHERIFF, DIRECTOR, ADMINISTRATOR, WARDEN AND SUPERINTENDENT - VICARIOUS LIABILITY FOR ACTS OF SUBORDINATES**

62.      Aleman restates and re-alleges the allegations set forth in paragraphs 1 through 60 of this First Amended Complaint.

63.      On information and belief, the CCDOC has a policy whereby the sheriff, the director, the administrator, the warden and a superintendent bear responsibility for the safety of inmates at the CCDOC.

64.      On information and belief, Defendants Dart, Godinez, Orr, John Doe I, and John Doe II had overall responsibility to ensure that CCDOC staff members took reasonable precautions to protect inmates from being assaulted and injured by other inmates.

65.      On information and belief, Defendants Dart, Godinez, Orr, John Doe I, and John Doe II knew or should have known that guards frequently violated the CCDOC's policy by leaving their posts at the day room and leaving inmates unsupervised.

66.      On information and belief, Defendants Dart, Godinez, Orr, John Doe I, and John Doe II failed to implement or enforce a policy to ensure replacement supervision in the event that a guard leaves his or her day room post.

67.      Defendants Dart, Godinez, Orr, John Doe I, and John Doe II knew or should have known that the likelihood of inmates being severely beaten and injured by other inmates when, as here, several dozen inmates were held in a room without supervision.

68.      Defendants Dart, Godinez, Orr, John Doe I, and John Doe II breached their duties to ensure that CCDOC guards took reasonable precautions to protect inmates from being assaulted by other inmates, due to their knowledge of CCDOC policy violations and breaches of duties by the guards, and were therefore personally involved in the guards' conduct.

69.     As a result of Defendants' Thomas, Godinez, Orr, John Doe I, and John Doe II inaction, Aleman was injured.

WHEREFORE, Aleman respectfully requests that the Honorable Court declare that the acts and omissions described herein violated Aleman's rights under the Constitution of the United States and 42 U.S.C. § 1983, enter judgment in favor of Aleman for damages, and such other relief as this Honorable Court deems proper.

## C.     SHERIFF, DIRECTOR, ADMINISTRATOR, WARDEN AND SUPERINTENDENT - DIRECT LIABILITY FOR VIOLATION OF CCDOC POLICY

70.     Aleman restates and re-alleges the allegations set forth in paragraphs 1 through 65 of this First Amended Complaint.

71.     On information and belief, the CCDOC has a policy whereby the sheriff, the director, the administrator, the warden and a superintendent bear responsibility for the safety of inmates at the CCDOC.

72.     On information and belief, Defendants Dart, Godinez, Orr, John Doe I, and John Doe II had overall responsibility to ensure that CCDOC staff members took reasonable precautions to protect inmates from being assaulted and injured by other inmates.

73.     On information and belief, Defendants Dart, Godinez, Orr, John Doe I, and John Doe II knew or should have known that guards frequently violated the CCDOC's policy by leaving their posts at the day room and leaving inmates unsupervised.

74.     On information and belief, Defendants Dart, Godinez, Orr, John Doe I, and John Doe II failed to implement or enforce a policy to ensure replacement supervision in the event that a guard leaves his or her day room post.

75.     Defendants Dart, Godinez, Orr, John Doe I, and John Doe II knew or should have known that the likelihood of inmates being severely beaten and injured by other inmates when, as here, several dozen inmates were held in a room without supervision.

76.     Defendants Dart, Godinez, Orr, John Doe I, and John Doe II breached their duty by failing to enforce the policies and adequately supervise CCDOC staff members to ensure Aleman's safety from other inmates.

77.     As a result of Defendants' Dart, Godinez, Orr, John Doe I, and John Doe II inaction, Aleman was injured.

WHEREFORE, Aleman respectfully requests that the Honorable Court declare that the acts and omissions described herein violated Aleman's rights under the Constitution of the United States and 42 U.S.C. § 1983, enter judgment in favor of Aleman for damages, and such other relief as this Honorable Court deems proper.

**COUNT II**
**EIGHTH AND FOURTEENTH AMENDMENT CLAIM CONCERNING**
**FAILURE TO PROVIDE MEDICAL AID IN VIOLATION OF 42 U.S.C. § 1983**

**A.     CORRECTIONAL OFFICERS – DIRECT LIABILITY FOR FAILURE TO PROVIDE MEDICAL AID**

78.     Aleman restates and re-alleges the allegations set forth in paragraphs 1 through 50 of this First Amended Complaint.

79.     CCDOC guards have a duty to recognize, acknowledge, and respond to an inmate's serious medical need and to an inmate's complaints of pain, and to refer the inmate to the CCDOC internal medical staff upon notice of such medical needs.

80.     Defendants John Doe III and John Doe IV knew or reasonably should have known that Aleman's medical condition was serious prior to and upon his return from Cermak, from January 1, 2007 to January 4, 2007 for the following reasons:

a.   Aleman's face was visibly swollen;

b.   Aleman's lips were bleeding both inside and outside of his mouth;

c.   Aleman had lost three teeth and his mouth was bleeding;

d.   Aleman requested medical aid including pain medication;

e.   Aleman advised the guards that he was unable to eat or drink;

f.   Aleman's face swelled causing his left eye to be impaired;

g.   Aleman had difficulty speaking; and

h.   Aleman's pain caused him to cry out loud.

81.   Defendants John Doe III and John Doe IV acted with deliberate disregard of Aleman's health and well being and breached their duties to recognize, acknowledge, and respond to an inmate's serious medical need and to an inmate's complaints of pain.

82.   Defendants John Doe III and John Doe IV also acted with deliberate disregard when they failed to refer inmates to the CCDOC internal medical staff upon notice of such needs thereby denying Aleman medical treatment and disregarding: (i) Aleman's request for stronger pain medication, (ii) the symptoms of Aleman's worsening medical condition, including further swelling of his face and cheeks, limited vision in his left eye and additional fallen-out teeth, (iii) the unsanitary conditions in which Aleman was placed after his return from Cermak, and (iv) Aleman's inability to eat, drink, and speak.

83.   Defendants' John Doe III and John Doe IV deliberate disregard of Aleman's medical condition resulted in further significant injury and unnecessary and wanton infliction of pain to Aleman.  As a result of this deliberate disregard, Aleman had to be taken to Cermak on January 4, 2007 where he stayed for eight (8) days and was treated for infection in his mouth with intravenous medications and lost additional teeth and suffered severe, unnecessary pain.

WHEREFORE, Aleman respectfully requests that the Honorable Court declare that the acts and omissions described herein violated Aleman's rights under the Constitution of the United States and 42 U.S.C. § 1983, enter judgment in favor of Aleman for damages, and such other relief as this Honorable Court deems proper.

**B.      MEDICAL STAFF– DIRECT LIABILITY FOR FAILURE TO PROVIDE MEDICAL AID**

84.      Aleman restates and re-alleges the allegations set forth in paragraphs 1 through 50 and 78 through 83 of this First Amended Complaint.

85.      On information and belief, the CCDOC has a policy whereby members of the CCDOC medical staff bear a responsibility for ensuring that prison inmates at the CCDOC receive necessary medical care and treatment.

86.      On information and belief, the CCDOC medical staff have a duty to recognize, acknowledge, and respond to an inmate's serious medical need and to an inmate's complaints of pain, and to treat such inmates upon notice of such needs.

87.      Defendant Jane Doe II was responsible for Aleman's medical care while Aleman was at the CCDOC.

88.      Defendant Jane Doe II knew or should have known about Aleman's injuries and the worsening of his medical condition after Aleman was released from the infirmary and Cermak on December 31, 2006.

89.      Defendant Jane Doe II breached her duties to recognize, acknowledge, and respond to an inmate's serious medical need and to an inmate's complaints of pain, and to refer the inmate to the CCDOC internal medical staff upon notice of such needs, when she failed to ensure that Aleman received necessary medical aid for his injuries.

90.     Defendant Jane Doe II's deliberate disregard of Aleman's medical condition resulted in further significant injury and unnecessary and wanton infliction of pain to the Aleman.

WHEREFORE, Aleman respectfully requests that the Honorable Court declare that the acts and omissions described herein violated Aleman's rights under the Constitution of the United States and 42 U.S.C. § 1983, enter judgment in favor of Aleman for damages, and such other relief as this Honorable Court deems proper.

## C.     MEDICAL DIRECTOR AND CHIEF OPERATING OFFICER- VICARIOUS LIABILITY FOR ACTS OF MEDICAL STAFF CONCERNING FAILURE TO PROVIDE MEDICAL AID

91.     Aleman restates and re-alleges the allegations set forth in paragraphs 1 through 50 and 78 through 90 of this First Amended Complaint.

92.     On information and belief, the CCDOC has a policy whereby the medical director and Chief Operating Officer at the CCDOC bear a responsibility for: (a) ensuring that prison inmates receive necessary medical care and treatment; (b) monitoring the medical condition of inmates who return after medical treatment from the infirmary and Cermak or otherwise have exhibited need for medical aid; and (c) overseeing administration of medical aid to prison inmates.

93.     On information and belief, Defendants Hart and Fagus have a duty to implement and enforce policies to ensure that medical staff takes reasonable precautions to provide adequate medical care and respond reasonably to complaints of severe pain and other medical needs.

94.     Defendants Hart and Fagus knew or should have known that Aleman had repeatedly requested and was repeatedly denied medical aid.

95.     Defendants Hart and Fagus violated the CCDOC policy with regard to ensuring that inmates receive necessary medical care and treatment and breached their duties to

implement and enforce certain policies by failing to ensure Aleman received medical care by knowing about policy violations and breaches of duties by medical staff and turning a blind eye to them.

96.     As a result of Defendants' Hart and Fagus inaction, Aleman suffered further significant injury and unnecessary and wanton infliction of pain.

WHEREFORE, Aleman respectfully requests that the Honorable Court declare that the acts and omissions described herein violated Aleman's rights under the Constitution of the United States and 42 U.S.C. § 1983, enter judgment in favor of Aleman for damages, and such other relief as this Honorable Court deems proper.

## D.     MEDICAL DIRECTOR AND CHIEF OPERATING OFFICER - DIRECT LIABILITY FOR FAILURE TO PROVIDE MEDICAL AID

97.     Aleman restates and re-alleges the allegations set forth in paragraphs 1 through 50 and 78 through 96 of this First Amended Complaint.

98.     On information and belief, the CCDOC has a policy whereby the medical director and Chief Operating Officer at the CCDOC bear a responsibility for; (a) ensuring that prison inmates receive necessary medical care and treatment; (b) monitoring the medical condition of inmates who return after medical treatment from the infirmary and Cermak or otherwise have exhibited need for medical aid; and (c) overseeing administration of medical aid to prison inmates.

99.     Defendants Hart and Fagus were responsible for Aleman's medical care while Aleman was at the CCDOC and knew or should have known about Aleman's injuries and the worsening of his medical condition after Aleman was released from the infirmary and Cermak on December 31, 2006.

100.    Defendants Hart and Fagus breached their duties and violated CCDOC policy by failing to ensure that Aleman received necessary medical aid for his injuries.

101.    Defendants Hart and Fagus were personally involved in the denial of medical care by the correctional officers and members of the CCDOC medical staff to Aleman.

102.    Defendants' Hart and Fagus deliberate disregard of Aleman's medical condition resulted in further significant injury and unnecessary and wanton infliction of pain to the Aleman.

WHEREFORE, Aleman respectfully requests that the Honorable Court declare that the acts and omissions described herein violated Aleman's rights under the Constitution of the United States and 42 U.S.C. § 1983, enter judgment in favor of Aleman for damages, and such other relief as this Honorable Court deems proper.

## E.    SHERIFF, DIRECTOR, ADMINISTRATOR, WARDEN AND SUPERINTENDENT - VICARIOUS LIABILITY FOR FAILURE TO PROVIDE MEDICAL AID

103.    Aleman restates and re-alleges the allegations set forth in paragraphs 1 through 77 of this First Amended Complaint.

104.    On information and belief, the CCDOC has a policy that the sheriff, the director, the administrator, the warden and a superintendent bear the responsibility for the management and day-to-day operations at the CCDOC, including ensuring that inmates receive adequate medical care.

105.    Defendants Dart, Godinez, Orr, John Doe I, and John Doe II were responsible for the Aleman's medical care while the Aleman was at the CCDOC and had a duty to ensure that he received adequate medical care.

106.    Defendants Dart, Godinez, Orr, John Doe I, and John Doe II knew or should have known about the Aleman's injuries and the worsening of his medical condition after the Aleman was released from the infirmary and Cermak on December 31, 2006.

107.    Defendants Dart, Godinez, Orr, John Doe I, and John Doe II breached their duty by failing to enforce the policy and failing to ensure that the Aleman received necessary medical aid for his injuries.

108.    Defendants' deliberate disregard of Aleman's medical condition resulted in further significant injury and unnecessary and wanton infliction of pain to the Aleman.

WHEREFORE, Aleman respectfully requests that the Honorable Court declare that the acts and omissions described herein violated Aleman's rights under the Constitution of the United States and 42 U.S.C. § 1983, enter judgment in favor of Aleman for damages, and such other relief as this Honorable Court deems proper.

## CONCLUSION

WHEREFORE, Aleman respectfully requests that the Honorable Court declare that the acts and omissions described herein violated Aleman's rights under the Constitution of the United States and 42 U.S.C. § 1983, enter an order awarding:

A.    Money damages in an amount to be determined;

B.    Reasonable attorneys' fees pursuant to 42 U.S.C. 1983, 1988 and the laws of the United States;

C.    Reasonable costs and expenses incurred as a result of this lawsuit; and

D.    Any other relief as this Honorable Court deems just and appropriate.

Respectfully Submitted,

Dated: <u>December 30, 2008</u>

By:  /s/ Holly M. Spurlock

Peter M. Ellis
Kenneth L. Schmetterer
Holly M. Spurlock
Katerina Budacsek
Amanda L. Fox
DLA PIPER US LLP
203 North LaSalle Street, Suite 1900
Chicago, IL  60601-1293
Telephone:    312.368.4000
Attorneys for Plaintiff Alvaro Aleman