**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALVARO ALEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 08 C 6322 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr., |
| | ) | |
| THOMAS DART, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alvaro Aleman sued multiple defendants under 42 U.S.C. § 1983, alleging violations of federal law occurring during Plaintiff's pre-trial detention at Cook County Jail ("CCJ") in Chicago. Only Defendants David Fagus and Avery Hart remain in the case. Specifically, Plaintiff contends that, during his time at CCJ, jail officials failed to protect him from an assault by other inmates and failed to provide adequate medical care following the assault. Defendants Fagus and Hart have moved for summary judgment [99] on the basis that Plaintiff failed to exhaust his administrative remedies prior to filing suit. For the reasons set forth below, the Court grants Defendants' motion for summary judgment [99].

**I.    Factual Background**

Alvaro Aleman currently is an inmate at the Centralia Correctional Facility in Centralia, Illinois. Between December 6, 2006 and August 8, 2008, Aleman was an inmate in the Cook County Department of Corrections (the "CCDOC") and was housed at CCJ. According to Aleman, he was assaulted by two other inmates on December 31, 2006 at CCJ, and three of his teeth were knocked out. Aleman was taken to the infirmary, where he was treated by a member of the medical staff at the CCDOC. The nurse cleaned Aleman's mouth and inserted cotton balls

to stop the bleeding. Aleman, who speaks and understands only Spanish, was unable to describe his pain to the nurse or to answer her questions. The nurse did not ask a Spanish speaking guard to translate. Aleman was taken to Cermak Health Services for an x-ray and was given 14 pain pills and two icepacks.

On January 1 and 2, 2007, Aleman requested additional medical attention in the form of pain pills because he did not believe that the 14 pills he was given the day before were working. According to his deposition testimony, he filled out two yellow medical request forms ("Detainee Health Request Forms") asking for additional medical attention. He did not request medical attention on January 3 because he had a court date. On January 4, 2007, Aleman was taken to Cermak Hospital for treatment of the infection. He described the pain as "more than ten" on a scale from one to ten. Aleman remained at Cermak on intravenous medications for eight days, during which time he was on a liquid diet because his pain prevented him from eating solid foods. A Cermak dentist removed two of Aleman's teeth as a result of the infections in Aleman's teeth and gums. Thus, in total, he lost five teeth following his altercation with two inmates.

At the time of Plaintiff's incarceration, CCJ had a grievance procedure available to detainees. General Order 14.5, entitled Inmate Rights and Welfare, sets forth the policy and procedure for detainees to follow when filing grievances. General Order Number 14.7, entitled Rules and Regulations for Inmates, sets forth information pertaining to inmates' rights and welfare at CCJ. Defendants have introduced evidence that upon arrival at CCJ, a copy of the Rules and Regulations for Detainees is given to each detainee. The document, which is available in both English and Spanish, also is posted in detainee areas throughout CCJ. Additionally, each morning a video is played on the television in each living unit with all of the rules and

regulations in both English and Spanish. The Rules and Regulations detail the "Grievances Guidelines," including instructions on how to process a grievance using grievance forms.

If an inmate feels that he has been wronged, he may fill out a grievance form. The Correctional Rehabilitation Worker ("CRW") collects completed grievances in the respective division. When a detainee requires assistance in completing the grievance form because of language deficiency, the CRW will provide the necessary assistance. Some grievances may be processed as a "request," rather than as a grievance, as a way to resolve the issue. If the detainee is not satisfied with the attempt to resolve the issue, the detainee may resubmit the concern and it will be processed as a grievance. If, after a determination of the detainee's grievance, the inmate wishes to appeal the decision, he or she may seek review from the appeal panel within 14 days of his receipt of the decision.

During his deposition, Plaintiff testified that he had used the grievance procedure in the past. During his time at CCJ, Plaintiff filled out a grievance form on January 1, 2008, for an injury to his hand that he received on October 18, 2007. He requested an orthopedic specialist to assess the injury to his finger. His grievance was referred to the "division physician" and he received a response on January 15, 2008, which he signed. He did not file an appeal of his grievance. In answering questions posed by his attorney during his deposition, Aleman made clear that he was only complaining about his hand in the January 2008 grievance. Furthermore, a review of Aleman's January 2008 grievance clearly shows that it does not relate to the issues being addressed in this lawsuit. Rather, it relates to the facts presented in another case in this district. See *Aleman v. Cook County Dept. of Corrections*, Civil No. 09-C-6049.

Plaintiff testified that he did not file a grievance about the injuries that he sustained as a result of the fight on December 31, 2006. He did not testify that he believed the procedures were

3

unavailable to him or that he did not understand the procedures.[1] Rather, he testified that he only filed yellow medical request forms for his mouth injury, but then filed a grievance related to his hand injury at a later date.

On November 4, 2008, Aleman filed a *pro se* complaint and a motion for appointment of counsel. The Court appointed Holly M. Spurlock to represent Plaintiff on November 10, 2008. Upon receipt of the appointment, DLA Piper conducted a conflicts search of its clients to determine whether there was a conflict with the firm's representation of Mr. Aleman. As a result of that search, Cook County appeared as a current client. Accordingly, DLA Piper prepared English and Spanish versions of its standard conflicts letter and provided the letters to Aleman. The letter informed Aleman that DLA Piper represents, and in the past has represented, Cook County in various corporate matters, not § 1983 claims. The letter further explained the means by which the firm maintains the integrity of its representation of one client when the opposing party is also a client of the firm. DLA Piper creates an ethical wall and keeps attorneys who work for each of the clients separate relative to the matter in which the two clients are adverse.

---

[1] In response to Defendants' motion for summary judgment, Plaintiff submitted an affidavit, which was signed and dated after Defendant's motion for summary judgment and supporting materials were filed. Plaintiff's affidavit, created after his deposition and after review of Defendants' summary judgment materials, introduces new additional facts and characterizes his deposition testimony in a different way. Eight of Plaintiff's nine statements of additional fact rely, at least in part, upon Plaintiff's affidavit for support. However, it is well-established that a plaintiff cannot defeat a motion for summary judgment by "contradict[ing] deposition testimony with later-filed contradictory affidavits." *Ineichen v. Ameritech*, 410 F. 3d 956, 963 (7th Cir. 2005); see also *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). As the Seventh Circuit further explained in *Bank of Illinois*, "we have long followed the rule that parties cannot thwart the purpose of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions * * * * If such contradictions were permitted * * * the very purpose of the summary judgment motion – to weed out unfounded claims, specious denials, and sham defenses – would be severely undercut.'" *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996). Here, Plaintiff, who was represented by court-appointed counsel during his deposition, not only attempts to characterize his deposition testimony in a different way, but his affidavit contradicts key facts found in his deposition related to the CCJ's grievance procedure and his efforts to file grievances while at CCJ. To the extent that the statements in Plaintiff's affidavit contradict his deposition testimony, the Court will not consider the affidavit in ruling on the summary judgment motion.

This is a standard practice at DLA Piper, as well as other law firms. Aleman signed and returned the Spanish version of the conflicts letter to DLA Piper. DLA Piper also provided this information to Aleman over the phone and began to work on his case immediately. Plaintiff, through appointed counsel working under considerable pressure on account of the looming statute of limitations, filed a first amended complaint on December 30, 2008. On August 14, 2009, Plaintiff filed a second amended complaint.

Defendants moved to dismiss several of Plaintiff's claims against Cook County and certain individual defendants. The Court granted Defendants' motion in large part on timeliness grounds,[2] but denied the motion as to Plaintiffs' § 1983 individual capacity claims against Defendants Hart and Fagus. After the Court granted in part the motion to dismiss, Plaintiff moved for the appointment of new counsel, citing the conflict described above. Plaintiff's motion, submitted *pro se*, was written in English and went into great detail on the conflicts issue, including citations to case law as well as a reference to the letter that he signed consenting to the representation. After Plaintiff filed his *pro se* motion, his appointed counsel moved to withdraw. After an in-court hearing on October 26, 2010, the Court granted the motion to withdraw after expressing its gratitude to counsel for her diligent and thorough representation of Plaintiff over 20 months.

On November 17, 2010, the Court appointed new counsel for Plaintiff. Defendants sought leave to depose Plaintiff on the issue of exhaustion of administrative remedies (among other things), which the Court granted. On April 27, 2011, the Court held a status conference with the parties, at which time the parties indicated that they wished to file a proposed agreed

---

[2] As stated in the Court's February 9, 2010 order granting in part the motion to dismiss, "given Plaintiff's own lack of diligence in waiting until late in the limitations period to file suit in the first place, even with the assistance of counsel, Plaintiff was unable to identify movants until after the limitations period had expired." The Court also noted that "Plaintiff's appointed counsel was diligent in seeking discovery in this case."

briefing schedule on a motion for summary judgment, primarily to address the issue of exhaustion. The parties filed their proposed schedule, which the Court adopted, and Defendants moved for summary judgment on the remaining claims. Plaintiff requested additional time to respond to the motion, which the Court granted, and the exhaustion issue is now ready for disposition.

## II. Standard of Review

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual disputes that are irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003) (quotation marks and citations omitted). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The

non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**III. Analysis**

Defendants contend that Plaintiff failed to exhaust his administrative remedies in regard to his claim that Defendants failed to provide him with adequate medical attention following the altercation Plaintiff had with two other inmates on December 31, 2006. Specifically, Defendants maintain that they are entitled to summary judgment because Plaintiff filed the instant suit without filing any grievance with CCJ. Plaintiff admits that he never filed a grievance regarding the denial of medical treatment alleged in Plaintiff's second amended complaint, but maintains that he failed to do so because the grievance procedures were not available to him.

Defendants contend, among other things, that they are entitled to judgment as a matter of law under the Prisoner Litigation Reform Act ("PLRA") because Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; see also *Pozo v. McCaughtney*, 286 F.3d 1022, 1023-24 (7th Cir. 2002) ("Unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred."). In *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008), the Seventh Circuit addressed "whether a prisoner plaintiff in a suit for damages governed by the

7

Prison Litigation Reform Act is entitled by the Seventh Amendment to a jury trial on any debatable factual issues relating to the defense of failure to exhaust administrative remedies." The court answered that question in the negative, holding that the district judge must determine as a threshold matter, before proceeding to disposition on the merits (and, in most cases, even discovery), whether "the prisoner has properly exhausted his administrative remedies." *Id*. at 741-42; see also *Hamilton v. Allen*, 2009 WL 395470, at *2 (N.D. Ill. Feb. 18, 2009) ("The issue of exhaustion of available administrative remedies is a threshold inquiry for the court").

The purpose of the exhaustion requirement is to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); see also *Jones v. Bock*, 549 U.S. 199, 219 (2007) (noting that exhaustion allows "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record"); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins"). Because failure to exhaust is an affirmative defense, the burden of proof lies with the prison officials, not with the plaintiff. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005).

The Seventh Circuit "has taken a strict compliance approach to exhaustion. A prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. Accordingly, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Moreover, there is no futility

exception to PLRA's exhaustion requirement. See *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999); *Massey v. Helman*, 196 F.3d 727 (7th Cir. 2000). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim. The potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures." *Massey*, 196 F.3d at 733. In short, "[e]xhaustion is required even if the prisoner believes his efforts in securing relief will be futile or if the administrative authority has no power to grant the requested relief." *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008) (citations omitted).

The PLRA obliges a prisoner who wishes to complain about prison conditions to forestall the filing of a lawsuit "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added); see also *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (failure to follow state rules about the time and content of grievances "means failure to use (and thus to exhaust) available remedies") (emphasis added). While the case law on what constitutes "availability" is not well developed, it is clear that a plaintiff's claims will not be dismissed if "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809-10; see also *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

In the instant case, the parties agree that Plaintiff never filed a grievance regarding the denial of medical treatment alleged in Plaintiff's second amended complaint. Plaintiff maintains that he did not fill out a grievance related to his mouth injuries because he did not understand the grievance procedure. A prisoner's lack of familiarity with English may excuse a failure to exhaust administrative remedies where the prisoner is given insufficient assistance by prison

9

officials to enable the prisoner to satisfy the prison grievance process. See, *e.g.*, *Bojorquez v. Fitzsimmons*, 2009 WL 790950, at *5 (C.D. Ill. Mar. 23, 2009) (a prisoner who did not speak English and who "apparently was provided no help * * * in filing a grievance" by prison officials exhausted available remedies because he provided as much information as possible on grievance forms); *Abel v. Pierson*, 2008 WL 509466, at *4 (S.D. Ill. Feb. 13, 2008) (denying summary judgment on the issue of whether an IDOC prisoner who spoke only Spanish failed to exhaust administrative remedies where "crucial questions regarding whether plaintiff was given appropriate assistance in completing a grievance and navigating the appropriate administrative remedies remain"). However, here, there is no evidence whatsoever that Aleman ever sought the assistance of prison officials, such as a grievance counselor or grievance officer, in filing a grievance. Instead, it appears that Aleman elected to rely upon the advice of his fellow prisoners, as he noted in his deposition that a fellow prisoner helped him write the January 2008 grievance. It may well be that Aleman felt more comfortable seeking advice from other prisoners instead of from prison officials, but this is not an excuse for failing to exhaust administrative remedies. See *Lang Vo Tran v. Illinois Dept. of Corrections*, 2011 WL 816630, at *8 (S.D. Ill. Mar. 1, 2011); see also *Rodriguez Ramos v. Smith*, 2005 WL 3054291, at **6-7 (E.D. Pa. Nov. 14, 2005) (an illiterate prisoner who did not speak English failed to exhaust his administrative remedies, where the prisoner's failure to file administrative appeals was the result of relying upon the advice of his attorneys; under pertinent prison regulations, the prisoner should have sought the assistance of the warden of the prison where he was confined or other prison officials, who were under an official duty to help him).

In addition, whatever disabilities Aleman may possess with respect to English proficiency, he plainly is able to make himself understood to English-speaking persons, as amply

10

evidenced by the *pro se* complaint that he was able to file prior to the appointment of counsel and the *pro se* motion for appointment of new "conflict-free" counsel. Given Aleman's ability to make himself understood to the English-speaking individual(s) who typed his initial complaint and wrote his motion for appointment of new counsel, it is reasonable to conclude that Aleman could have pursued administrative remedies despite his lack of proficiency in English. See *Sosa v. Cleaver*, 2005 WL 1205119, at *3 (D. Conn. May 18, 2005) (finding that "the lack of a Spanish version of the inmate handbook is not a special circumstance in this case that would justify [the plaintiff's] failure to file a grievance" when "all of the pleadings in this case have been submitted in English"); *Castano v. Nebraska Dep't of Corr. Servs.*, 1999 WL 1442028, at *3 (D. Neb. June 11, 1999) (Spanish-speaking prisoners who lacked English proficiency failed to exhaust administrative remedies where, despite their language disabilities, they were able to communicate with other prisoners so as to be able to correspond through other means).

Furthermore, Defendants put forth evidence that upon arrival at CCJ, a copy of the Rules and Regulations for Detainees is given to each detainee and that the document is available in both English and Spanish. Defendants also produced evidence that the Rules and Regulations are posted in detainee areas throughout CCJ and that each morning a video is played on the television in each living unit with all of the rules and regulations in both English and Spanish. Thus, the grievance procedures were available in both English and Spanish and in both written and oral communications.

Plaintiff attempts to use reports from the U.S. Department of Justice to support his argument that he did not receive a copy of the rules and regulations, but he does not address the uncontroverted fact that each day that he was housed in CCJ, the rules and regulations were recited orally in both English and Spanish. Furthermore, as the Court previously addressed,

11

Plaintiff attempts to use his affidavit to provide different testimony than he provided at his deposition. He never testified that he did not fill out a grievance because he did not understand how to do so. Plaintiff was asked if he ever wrote letters or a grievance to complain about the medical issues that he was having, and he answered, "About this case, No." Dep. of Alvaro Aleman at 23:13-16. He then was asked, "But you did file them regarding your hand, right?" He answered, "Yes." He was further asked whether he had assistance filling out the form out and he responded in the affirmative. Then he was asked if he filled out the Detainee Health Request Forms, and he answered yes. *Id.* at 25:1-3. None of Plaintiff's answers during his deposition gave any indication that he was not aware of the grievance procedure or how to file a grievance. His later-filed affidavit cannot overcome these admissions.

In light of the record presented, an administrative remedy was "available" to Aleman within the meaning of 42 U.S.C. § 1997e(a), despite Aleman's lack of competency in English. See *Lagalbo v. Raemisch,* 2010 WL 2900370, at *3 and n. 2 (E.D. Wis. July 20, 2010) (an administrative remedy is available to Wisconsin state prisoners under regulations of the Wisconsin Department of Corrections stating with respect to the prisoner complaint procedure that the agency "shall make appropriate provisions for non-English speaking, impaired or handicapped inmates"). His argument that he did not understand what he had to do is belied by (i) the fact that he submitted a grievance in January 2008 for his hand injury, (ii) the fact that the grievance procedure was available in both English and Spanish and in both written and oral communications, and (iii) most evidently by the fact that, despite his professed lack of competency in English, he clearly understood how to proceed in this case (as demonstrated by written documents filed with the Court) even without the assistance of counsel. Plaintiff clearly

failed to exhaust administrative remedies pertaining to the allegations in this lawsuit and summary judgment is appropriate on his remaining claims.

## IV. Conclusion

For the forgoing reasons, the Court grants Defendants' motion for summary judgment [99]. Judgment is entered in favor of Defendants and against Plaintiff Aleman.

Dated: February 14, 2012

_____
Robert M. Dow, Jr.
United States District Judge